UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

RUTH GROSE,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RUTH GROSE, by and through her undersigned counsel, sues the Defendant, AMERICAN AIRLINES INC., and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages and to remedy violations of the rights of RUTH GROSE under the Civil Rights Act of 1964, as amended ("Title VII") and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, AMERICAN AIRLINES, INC. ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Palm Beach County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

### PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Palm Beach County, Florida and is otherwise *sui juris*.

1

4. As a Black female, Plaintiff is a member of a protected class under the Civil Rights Act of 1964, as amended ("Title VII") and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), because the terms, conditions, and privileges of her employment were altered because of her race and gender.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on March 22, 2021. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

11. Defendant hired Plaintiff on May 4, 2012 as a customer service manager for ramp operations in Philadelphia. In September 2018, the Plaintiff transferred to Florida to serve as a manager for both ramp and customer service.

12. The Plaintiff's job duties were customer service and ramp operations.

13. Plaintiff was qualified for the positions she had based on her experience and training.

14. Plaintiff's salary as of her termination was $ 72,400.00.

15. On December 28, 2019, Mr. Michael O'Brian, a white ramp lead, and the Plaintiff pushed a broken-down push back off of a departing aircraft. Because the flight was already delayed and maintenance was not on the property, the Plaintiff and Mr. O'Brian visually inspected for damage to the aircraft, confirmed there was not any, and made a decision to proceed with the flight because the captain was in a rush to leave. In the process of lining up using a belt loader to make contact with the pushback, the rubber part of the belt loader handrail made contact with a small part of the aircraft right up under the door, not enough to cause damage and about the same amount of contact as any belt loader touching any aircraft as it is put into position when an aircraft arrives.

16. On December 30, 2019, the Plaintiff emailed Ms. Ruth Hightower, Black station manager and Plaintiff's direct supervisor, and told her what had occurred. The Plaintiff did not email her immediately after the incident because Ms. Hightower was not working on the 28th or 29th due to her own health issues. Initially, the Plaintiff planned on speaking with her about the incident in person, and since the Plaintiff was sure she would return to work on December 30, 2019, she waited so they could speak in person. When Ms. Hightower didn't return on December 30th as anticipated, the Plaintiff sent the email. When Ms. Hightower returned to work on December 31, 2019, the Plaintiff came in on her day off to discuss the incident and the email. In response to the incident, Ms. Hightower instructed the Plaintiff not to assist the ramp anymore. Prior to the incident, the Plaintiff had helped the leads with loading jet way bags onto a cart, driving

a tug with the bags to put them on the belt loader, or disconnecting the ground power unit from the craft. Whenever the Plaintiff helped the leads previously, she always obtained permission prior to doing so. Based on Ms. Hightower's direction on December 31st, the Plaintiff agreed not to assist the ramp going forward.

17. On January 9, 2020, Ms. Hightower instructed the Plaintiff to get Mr. O'Brian and come into her office. In her office, Ms. Hightower had the Plaintiff and Mr. O'Brian participate in a conference call with Ms. Hightower, Mr. Scott Clementis, white Regional Manager, Jason Byrn, Safety Manager, and another gentleman (name unknown), safety representative for the Union. The conference call participants interviewed Mr. O'Brian and the Plaintiff separately regarding the events on December 28th. During this meeting, the conference call participants accused the Plaintiff of hitting and damaging the aircraft, which she disputed. This accusation was based on reports made by three separate employees who claimed that the Plaintiff hit the aircraft. The Plaintiff explained that she inspected the aircraft and confirmed that there had not been any damage. The union safety representative pressed the Plaintiff on her experience on the ramp and she responded that she was a ramp agent for 16 years. Then, not being able to rely on a lack of experience on the ramp, he stated that the Plaintiff wasn't a mechanic. Two hours after the meeting concluded, Ms. Hightower told the Plaintiff that Mr. Clementis suspended her with pay pending the outcome of the investigation. Mr. O'Brian was not suspended.

18. The Plaintiff did not hear anything from the Defendant until January 22, 2020. Ms. Hightower called the Plaintiff at around 6 p.m. and told her that Mr. Clementis had instructed her to terminate her employment. She told the Plaintiff that she said to him, "do I not get a decision in this because this is my station and Ruth works for me?" Ms. Hightower told the Plaintiff that he did not directly respond to her question, instead saying, "If you cannot terminate Ruth, I will send

someone to do it for you." She asked the Plaintiff to come at a time when everyone would be gone and turn in company property in her possession. At 10 p.m. that same night, the Plaintiff went to work and gave her the office keys, badge, company ID, and parking pass. Ms. Hightower said that her preference would have been to give the Plaintiff a letter of "last chance agreement" saying that the Plaintiff could not have any further performance issues, but Mr. Clementis refused her recommendation. The Plaintiff asked Ms. Hightower if the investigation had concluded that the aircraft had been damaged in any way by the incident. She replied, "No, the aircraft was tracked for 20 hours, and they found nothing." The Plaintiff also asked her if the aircraft was taken out of service, and Ms. Hightower responded the Plaintiff that it was not. This meant that, before terminating the Plaintiff, the Defendant had conducted its investigation and reached the conclusion that the Plaintiff did not cause any damage to the aircraft and that the concerns were so insignificant that the aircraft was not even take out of service. Nevertheless, the Defendant terminated the Plaintiff's employment. Ms. Hightower also told the Plaintiff that Mr. Clementis raised an incident from when the Plaintiff was working in Philadelphia several years before where she used a belt loader to push a broken-down pushback off the security line. However, the Plaintiff was not written up for that incident therefore it was irrelevant. Ms. Hightower told the Plaintiff that she asked Mr. Clementis, "if Ruth was not written up in Philadelphia, why bring it up in Florida?" He did not respond.

19. The Plaintiff found out who the three people were who allegedly reported that she hit the aircraft. One was Robin, a white ramp agent, who the Plaintiff had previously reprimanded for performance issues. The second person was Mr. Jose Idanze, ramp lead, who the Plaintiff had reprimanded just three days prior to the December 28th incident. The third person was Mr. Jose Gonzalez, ramp lead. Mr. Gonzalez's statement was not that the Plaintiff hit the aircraft. Instead,

his statement was that he heard someone tell the Plaintiff to stop. He said that he was on top of the push back trying to get it started so the Plaintiff and the other employee wouldn't have to push it off, but they pushed it off anyways. Significantly, if any of these three, or any other employee, had witnessed the Plaintiff damaging the aircraft, they would have been required to stop the departure of the aircraft, but no one did so. No one took any pictures or did anything or said anything to the Plaintiff about damage or her actions at the time.

20. The truth is that the Defendant terminated the Plaintiff only due to her race and gender. Again, after the flight pushed off the gate, Mr. Puleo, an eye-witness, did not report the incident, but instead went into operations and chatted about it to Ms. Robin Woods, ramp agent in operations, and Mr. Jose Ibanez, crew chief. As the operations agent, Ms. Woods had a responsibility to contact the captain to return to the gate if there was damage to the aircraft. Mr. Michael O'Brien, crew chief, had a responsibility to also contact the captain before the aircraft left the gate if there was damage to the aircraft. In fact, every employee has the duty to stop the departure of any aircraft they deem damaged, yet no one stopped the aircraft. Since there was no damage to the flight, no one took pictures and no one contacted the Captain before departure.

21. After the Plaintiff's termination, she learned from a manager in Tampa that two to three weeks before the December 28, 2019, incident, Michael, a white manager, in Tampa was suspended with pay for one week in order to obtain his drug testing results after an incident that resulted in significant damage to an aircraft.  The damage to the aircraft required the Defendant to remove the aircraft from service and spend $443,000.00 to repair the damage. He caused the damage by being distracted while watching another aircraft depart from the next gate. He was using the airstairs, which are ground equipment used to remove passengers when an aircraft is parked at a remote location. Michael stated that he misjudged his closeness to the aircraft.

Michael's direct supervisor is Mr. Frankie Jamison. Mr. Clementis is Ms. Jamison's boss. Mr. Clementis allowed Mr. Jamison to have input in the actions to be taken regarding Michael's incident. Mr. Clementis did not allow the Plaintiff's general manager to be involved in the decision regarding her employment. Of course, a one-week suspension with pay is significantly more lenient than termination.

22.     Every day, ramp employees place belt loaders too close to the aircraft and accidentally bump it. They place belt loaders inside the aircraft and touch the floor or side of the cargo door with the belt loader and bump the areas near the door. The Defendant has not disciplined anyone for these incidents. No maintenance personnel have been called out for inspection. Every day, someone makes the decision to remove disabled equipment blocking an arriving or departing aircraft without contacting maintenance. The Plaintiff was only terminated because she is a Black female.

23.     Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

### COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Race)**

24.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 23, inclusive, as though same were fully re-written here

25.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against and ultimately terminated on the basis of her race, Black.

26. Mr. Clementis at all times relevant, was acting within the course and scope of his employment for Defendant.

27. Because Plaintiff is Black, she was discriminated against and ultimately terminated by management, and the Defendant refused to take any action to prevent the discrimination.

28. Upon information and belief, non-Black, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

29. Upon information and belief, non-Black, similarly situated employees are not permitted to be interrogated and ultimately terminated by management.

30. Upon information and belief, non-Black, similarly situated employees are held to a different standard.

31. Upon information and belief, the Defendant does not terminate non-Black, similar situated employees for routine actions in which many other employees partake.

32. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, RUTH GROSE, being discriminated against and ultimately terminated.

33. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

34. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, punitive damages, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's costs, fees, interest, and such other relief as the Court deems just and appropriate.

### COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Race)**

35. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 23, inclusive, as though same were fully re-written here.

36. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

37. Plaintiff is Black and therefore a member of a protected class.

38. Because Plaintiff is Black, she was discriminated against and ultimately terminated by management, and the Defendant refused to take any action to prevent the discrimination.

39. Mr. Clementis at all times relevant, was acting within the course and scope of his employment for Defendant

40. Upon information and belief, non-Black, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

41. Upon information and belief, non-Black, similarly situated employees are not permitted to be interrogated and ultimately terminated by management.

42. Upon information and belief, non-Black, similarly situated employees are held to a different standard.

43. Upon information and belief, the Defendant does not terminate non-Black, similar situated employees for routine actions in which other employees partake.

44. At all relevant and material times, Defendant failed to comply with the FCRA.

45. The discrimination and termination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's race.

46. At all times relevant, including the time of the unlawful and discriminatory termination, Defendant was aware that Plaintiff was Black.

47. At the time of the unlawful termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

48. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

49. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her race in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees and ultimately terminate her.

50. Plaintiff's termination was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she is Black, in violation of the FCRA.

51. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's race.

52. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her race. The termination on the basis of race constitutes unlawful discrimination.

53. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, punitive damages, interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Gender)**

54. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 23, inclusive, as though same were fully re-written here.

55. Plaintiff brings this action under Title VII for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against and ultimately terminated on the basis of her gender, female.

56. Mr. Clementis at all times relevant, was acting within the course and scope of his employment for Defendant.

57. Because Plaintiff is a woman, she was discriminated against and ultimately terminated by management, and the Defendant refused to take any action to prevent the discrimination.

58. Upon information and belief, similarly situated male employees are not treated in the same manner as Defendant treated Plaintiff.

59. Upon information and belief, similarly situated male employees are not permitted to be interrogated and ultimately terminated by management.

60. Upon information and belief, similarly situated male employees are held to a different standard.

61. Upon information and belief, the Defendant does not terminate similar situated male employees for routine actions in which other employees partake.

62. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, RUTH GROSE, being discriminated against and ultimately terminated.

63. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

64. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, punitive damages, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with Title VII of the Civil Rights Act of 1964, §706(g); attorney's fees, costs, together with interest thereon, and such other relief as the Court deems just and appropriate.

## COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Gender)**

65. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 23, inclusive, as though same were fully re-written here.

66. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

67. The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

68. Plaintiff is a woman, and therefore a member of a protected class.

69. Mr. Clementis at all times relevant, was acting within the course and scope of his employment for Defendant.

70. Because Plaintiff is a woman, she was discriminated against and ultimately terminated by management, and the Defendant refused to take any action to prevent the discrimination.

71. Upon information and belief, similarly situated male employees are not treated in the same manner as Defendant treated Plaintiff.

72. Upon information and belief, similarly situated male employees are not permitted to be interrogated and ultimately terminated by management.

73. Upon information and belief, similarly situated male employees are held to a different standard.

74. Upon information and belief, the Defendant does not terminate similar situated male employees for routine actions that all employees partake in.

75. At all relevant and material times, Defendant failed to comply with the FCRA.

76. At all times relevant, including at the time of the unlawful and discriminatory termination, Defendant was aware that Plaintiff was a woman.

77. At the time of the unlawful termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by the Defendant.

78. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

79. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her being a woman in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees and ultimately terminate her.

80. Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified termination against Plaintiff because she is a woman, in violation of the FCRA.

81. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff being a woman. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her sex. The termination on the basis of sex constitutes unlawful discrimination.

82. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against the Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, punitive damages, prejudgment and post-judgment interest, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 21st day of June, 2021.

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff